UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

OOO-RM INVEST
Italyanskaya str #5
St. Petersburg, Russia 191011


      Plaintiff,

v.

NET ELEMENT INTERNATIONAL, INC.
3363 NE 163rd Street, Suite 705
North Miami Beach, FL 33160

and

Dmitry Kozko
3363 NE 163rd Street, Suite 705
North Miami Beach, FL 33160

And

Mike Zoi
3363 NE 163rd Street, Suite 705
North Miami Beach, FL 33160


      Defendant.

---

## COMPLAINT

Plaintiff, OOO-RM Invest, by and through its undersigned counsel, hereby files this

Complaint against Net Element International, Inc., Dmitry Kozko and Mike Zoi, and in support

thereof avers as follows:

1

**PARTIES**

1.     Plaintiff OOO-RM Invest ("RM Invest"), is a limited liability company organized under the laws of the Russian Federation with its principal place of business in St. Petersburg, Russia.

2.     Defendant Net Element International, Inc. ("NETE, USA."), is a corporation incorporated under the laws of Delaware with its principal place of business in Miami-Dade County, Florida.

3.     Defendant Dmitry Kozko ("Kozko"), is an adult individual, who resides and/or maintains his principal place of business in Miami-Dade County, Florida.  At all relevant times herein Kozko held the position of President of NETE, USA and Operating Director of NETE, LLC.

4.     Defendant Mike Zoi, is an adult individual, who resides and/or maintains his principal place of business in Miami-Dade County, Florida.

**JURISDICTION AND VENUE**

5.     The basis of jurisdiction is 28 U.S.C. § 1332 as diversity of citizenship exists between the parties and the amount in controversy is greater than $75,000.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) in that NETE, USA is a resident of this state and this judicial district and the remaining Defendants are residents of this state;  and a substantial part of the events or omissions giving rise to RM Invest's claims occurred in this judicial district, including, but not limited to, NETE, USA, Kozko and Zoi's failure to provide financing and deliver key customer accounts; NETE, USA's

2

failure to transfer ownership interest of new entity to RM Invest, NETE, USA's primary place of business is within this state and District, NETE, USA, Kozko and Zoi regularly conduct business within this state and District, have systematic and continuous contact with Florida, have purposefully directed their activities towards Florida, and RM Invest's damages arise from and/or are related to those activities.

## **FACTUAL BACKGROUND**

7.      In 2005 a group of investors began developing a business model for billing and payment services to be provided in the Russian Federation.  These billing and payment services were processed through cellular operators which conduct business in the Russian Federation.

8.      In December 2007, the investors formed OOO-RM Invest to operate the billing and payment service.

9.      The billing and payment services provided by RM Invest are analogous to a Paypal transaction in the United States, wherein a purchaser uses the RM Invest service to buy goods or services and RM Invest makes payment to the seller of the goods.  However, in the Russian Federation, payments by the purchaser are not applied to the RM Invest accounts for a period of thirty (30) to sixty (days).  Thus, billing and payment services in the Russian Federation must rely on large credit facilities to finance payments made to sellers of goods and services during the transaction period.

10.     In March 2008, RM Invest began operation of its website, which allowed RM Invest to accept registration of new cellular operators.

11.     In April 2008, RM Invest entered into initial contracts with several cellular

3

operators.

12.    Because the percentage of each transaction owed to RM Invest by the cellular operators processed under these initial agreements was directly correlated to the overall amount of transactions conducted by RM Invest,  the lack of  initial transactional traffic resulted in RM Invest's  collectible percentage being valued between ten percent (10%) to twelve percent (12%) below the market rate.

13.    As a result of this dynamic, RM Invest was forced to run its business at a loss until the company could satisfy the cellular operator's transactional traffic requirements necessary to secure market rates.

14.    In order to finance the business at this time, it was necessary for RM Invest to obtain private financing with interest rates between twenty five percent (25%) and twenty eight percent (28%), which further increased RM Invest's operating expenses.

15.    During the period of RM Invest's initial operations, April 15, 2008 through December 14, 2010, RM Invest incurred operating expenses equaling approximately Four Million Seven Hundred Thousand Dollars ($4,700,000.00).

16.    In the period between 2010 and November 2011, RM Invest continued to increase the amount of cellular operator transactions that RM Invest processed.

17.    As of November 2011, RM Invest had secured lucrative contracts with multiple cellular operators, including but not limited to Beeline, Megafon and MTS.  The Beeline, Megafon, and MTS operators accounted for more than Ninety Percent (90%) of the transactions processed by RM Invest.

4

18.     In 2011, RM Invest processed billing and payment transactions totaling One Hundred Twenty Two Million Nine Hundred Fifty Seven Thousand Five Hundred and Forty Three Dollars ($122,957, 543.00).

19.     RM Invest's business continued to expand in 2012, wherein RM Invest processed Fifty One Million Eight Hundred Seventy Three Thousand and Twenty Dollars ($51,873,020.00) in billing and payment transactions in the first quarter of 2012.

## RM Invest - Net Element International, Inc. Agreement

20.     In November 2011, NETE, USA indicated that it was interested in making an investment in RM Invest.

21.     NETE, USA was represented by Zoi in its initial discussions with RM Invest concerning NETE, USA's potential investment in RM Invest.

22.     RM Invest supplied NETE, USA, through Zoi, information relevant to the operation of RM Invest's business model.  The information provided included but was not limited to the Beeline, Megafon and MTS accounts and the revenues derived therefrom.

23.     After reviewing the information provided by RM Invest, Zoi indicated that NETE, USA was ready to invest in RM Invest, pending a final review of RM Invest's operations by NETE, USA, President Dmitry Kozko.

24.     On November 30, 2011 Kozko spoke with RM Invest via telephone regarding NETE, USA's intention to invest in RM Invest.  Following that conversation, Kozko, on behalf of NETE, USA, requested financial and operational information from RM Invest.

25.     RM Invest supplied all requested information to NETE, USA

5

26.     Negotiations continued between RM Invest and NETE, USA through July of 2012.

27.     During the negotiation process, NETE, USA indicated that it would supply the necessary financing for the venture through its relationship with ALFA-Bank and that NETE, USA would deliver Digital Sky Technologies ("DST"), a large social media company operating in Russia, as a client to the new venture.

28.     NETE, USA indicated that the DST accounts to be provided would include Odnoklassniki.ru, Vkontakte.ru, and mail.ru.

29.     Vkontakte.ru is a large European social networking site with more than a 100 million active users. [1]

30.     The Mail.ru group, which includes Mail.ru and Odnoklassnik.ru, is the largest internet company in the Russian-speaking world.

31.     Mail.ru is one of the largest free email services in the Russian-speaking world.

32.     Odnoklassniki.ru is one of the three largest Russian-language online networking sites.

33.     Prior to and at the time the above referenced agreements were made, Kozko and Zoi confirmed that NETE, USA had agreements in place with ALFA-Bank to provide the necessary financing to support the business and that agreements were in place with DST with regard to the delivery of DST key accounts, including but not limited to Odnoklassniki.ru, Vkontakte.ru, and mail.ru.

---

1 Odnoklassniki.ru and Vkontakte.ru are social networking sites similar in operation to Facebook.  Mail.ru is a free email service provider which operates similarly to gmail.com, outlook.com, and mail.yahoo.com.

34.    On information and belief, the representations regarding the ALFA-Bank financing and the DST agreements were made by Kozko and Zoi to induce RM Invest into entering into its agreement with NETE, USA.

35.    RM Invest reasonably relied upon Kozko and Zoi's representations when entering into its agreement with NETE, USA.

36.    On or about July 11, 2012, RM Invest and NETE, USA agreed on the following terms (hereinafter collectively referred to as the "Oral Agreement"):

> a)  NETE, USA and RM Invest would form a new entity, TOT Money International, LTD ("TOT Money") in which to continue the operations of RM Invest;
>
> b)  NETE, USA would provide TOT Money financing in the amount of 600,000,000 rubles;
>
> c)  NETE, USA would assume RM Invest's liabilities with regard to the RM Invest Partners and RM Invest's liabilities to NOMOS-Bank;
>
> d)  NETE, USA would assume liabilities for all current RM Invest transactions;
>
> e)  NETE, USA would be responsible for all business operations of RM Invest and TOT Money;
>
> f)  NETE, USA would deliver the Digital Sky Technologies ("DST") account to TOT Money, including but not limited to the following key DST structures:

7

  i.   Odnoklassniki.ru

  ii.   Vkontakte.ru

  iii.   mail.ru

g)   RM Invest would receive a Thirty Percent (30%) ownership stake in the
      TOT Money and/or receive shares of stock in NETE, USA;

h)   Tcahai Hairullaevich Katcaev would hold the position of General Director
      of TOT Money;

i)   RM Invest would provide access to TOT Money to RM Invest's operating
      accounts;

j)   RM Invest would transfer client accounts and contracts to TOT Money;

37.   Zoi confirmed the terms of the above referenced Oral Agreement during a meeting
with RM Invest which took place between July 23rd and July 28th 2012.

38.   Specifically Zoi confirmed that:

a)   NETE, USA and RM Invest would form a new entity, TOT Money
      International, LTD ("TOT Money") in which to continue the operations of
      RM Invest;

b)   NETE, USA would provide TOT Money financing in the amount of
      600,000,000 rubles;

c)   NETE, USA would assume RM Invest's liabilities with regard to the RM
      Invest Partners and RM Invest's liabilities to NOMOS-Bank;

d)   NETE, USA would assume liabilities for all current RM Invest

8

transactions;

e) NETE, USA would be responsible for all business operations of RM Invest and TOT Money;

f) NETE, USA would deliver the Digital Sky Technologies ("DST") account to TOT Money, including but not limited to the following key DST structures:

     i. Odnoklassniki.ru

     ii. Vkontakte.ru

     iii. mail.ru

g) RM Invest would receive a Thirty Percent (30%) ownership stake in the TOT Money and/or receive shares of stock in NETE, USA;

h) Tcahai Hairullaevich Katcaev would hold the position of General Director of TOT Money;

i) RM Invest would provide access to TOT Money to RM Invest's operating accounts;

j) RM Invest would transfer client accounts and contracts to TOT Money;

**Net Element International, Inc.'s Breach of the Oral Agreement**

39.    Pursuant to the Agreement between the parties, RM Invest began transferring its contracts, subscriber base, and control of its operating accounts to TOT Money.

40.    NETE, USA failed to perform its obligations under the Oral Agreement.

41.    Specifically, NETE, USA breached the following terms of the Oral Agreement:

a) NETE, USA failed to provide the agreed upon financing of 600,000,000 Rubles through ALFA-Bank for use as operating capital;

b) NETE, USA failed to assume liabilities of RM Invest and make payments for billing and payment transactions processed through RM Invest at the time of the Agreement;

c) NETE, USA failed to make payments to RM Invest Employees and/or TOT Money Employees;

d) NETE, USA failed to timely pay interest on RM Invest's factoring arrangement with NOMOS-Bank;

e) NETE, USA failed to deliver the DST business to TOT Money, including but not limited the following accounts: Odnoklassniki.ru, Vkontakte.ru, and mail.ru;

f) NETE, USA failed to transfer a 30% ownership interest in TOT Money to RM Invest;

g) NETE, USA failed to transfer promised shares of stock in NETE, USA to RM Invest;

h) NETE, USA failed to properly manage the operations of the RM Invest business;

i) NETE, USA failed to properly manage the operations of TOT Money.

42. RM Invest became aware of NETE, USA's breaches only after Ninety Percent (90%) of the RM Invest accounts had already been transferred to TOT Money.

43.     At this time, RM Invest became aware that, contrary to Kozko and Zoi's representations, NETE, USA had not finalized the financing agreements with ALFA-Bank prior to its entry into the Agreement.

44.     RM Invest became further aware that, contrary to Kozko and Zoi's representations, NETE. USA had yet to secure agreements regarding the DST business, including but not limited to the Odnoklassniki.ru, Vkontakte.ru, and mail.ru accounts.

45.     NETE, USA failed to cure these breaches within a reasonable time.

46.     In December 2012, RM Invest requested that NETE, USA return all RM Invest supplied financial accounts, client contracts, and operations to RM Invest. NETE, USA declined to do so and continued operating the businesses, to RM Invest's detriment.

47.     NETE, USA continued to be unable to provide reliable billing and payment services to the RM Invest/TOT Money clientele, a failure which resulted in the loss of clients, loss of financing, and the loss of the business's goodwill.

48.     As a result of NETE, USA's actions, the value of the RM Invest business was destroyed.

### COUNT I - BREACH OF CONTRACT
### *RM Invest v. Net Element International, Inc.*

49.     RM Invest hereby repeats and incorporates the preceding paragraphs, as though set forth at length herein.

50.     As set forth in greater detail herein above, RM Invest and NETE, USA entered into legally binding and enforceable oral contract whereby RM Invest would merge its business with business to be supplied by NETE, USA for a Thirty Percent (30%) ownership in the

11

combined business, NETE, USA would secure all financing necessary for the operation of the combined business, and NETE, USA would manage the operations of the combined business.

51.     NETE, USA violated and breached the parties' legally binding and enforceable oral contract in the following manner:

a)  NETE, USA failed to provide the agreed upon financing of 600,000,000 Rubles through ALFA-Bank for use as operating capital;

b)  NETE, USA failed to assume liabilities of RM Invest and make payments for billing and payment transactions processed through RM Invest at the time of the Agreement;

c)  NETE, USA failed to make payments to RM Invest Employees and/or TOT Money Employees;

d)  NETE, USA failed to timely pay interest on RM Invest's factoring arrangement with NOMOS-Bank;

e)  NETE, USA failed to deliver the DST business to TOT Money, including but not limited the following accounts: Odnoklassniki.ru, Vkontakte.ru, and mail.ru;

f)  NETE, USA failed to transfer a 30% ownership interest in TOT Money to RM Invest;

g)  NETE, USA failed to transfer promised shares of stock in NETE, USA to RM Invest;

h)  NETE, USA failed to properly manage the operations of the RM Invest

business;

i)   NETE, USA failed to properly manage the operations of TOT Money.

52.   As a result of said actions, RM Invest has suffered damages in excess of Fifty Million Dollars ($50,000,000.00) based on the lost value of the company.

**WHEREFORE,** RM Invest demands judgment against NETE, USA in an amount in excess of Fifty Million Dollars ($50,000,000.00), plus cost and interest, as well as such further relief as the court deems appropriate.

## COUNT II – NEGLIGENT MISREPRESENTATION
### *RM Invest v. Kozko and Zoi*

53.   RM Invest hereby repeats and incorporates the preceding paragraphs, as though set forth at length herein.

54.   Prior to and at the time the above referenced agreements were made, Kozko and Zoi made representations to RM Invest that NETE, USA had agreements in place with ALFA-Bank to provide the necessary financing to support the business and that NETE, USA had agreements in place with DST with regard to the delivery of DST key accounts, including but not limited to Odnoklassniki.ru, Vkontakte.ru, and mail.ru.

55.   Kozko and Zoi knew or should have known that these statements were false at the time they were made.

56.   Kozko and Zoi intended or expected that RM Invest would reasonably rely on these representations.

57.   RM Invest justifiably relied upon Kozko and Zoi's representations when entering into the Agreement with NETE, USA, to its detriment.

13

58.     As described more fully above, NETE, USA's failure to obtain the promised financing and NETE, USA's failure to acquire the promised business accounts from DST resulted in the complete loss of the RM Invest business.

59.     Based on the foregoing, Kozko and Zoi's material misrepresentations to RM Invest regarding the ALFA-Bank financing DST business accounts were a direct cause of RM Invest's damages.

60.     As a result of said actions, RM Invest has suffered damages in excess of Fifty Million Dollars ($50,000,000.00) based on the lost value of the company.

**WHEREFORE**, RM Invest demands judgment against Kozko and Zoi in an amount in excess of Fifty Million Dollars ($50,000,000.00), plus cost and interest, as well as such further relief as the court deems appropriate.

## COUNT III – FRAUD IN THE INDUCEMENT
### *RM Invest v. Kozko and Zoi*

61.     RM Invest hereby repeats and incorporates the preceding paragraphs, as though set forth at length herein.

62.     Prior to and at the time the above referenced agreements were made, Kozko and Zoi made representations to RM Invest that NETE, USA had agreements in place with ALFA-Bank to provide the necessary financing to support the business and that NETE, USA had agreements in place with DST with regard to the delivery of DST key accounts, including but not limited to Odnoklassniki.ru, Vkontakte.ru, and mail.ru.

63.     Kozko and Zoi knew or should have known that these statements were false at the time they were made.

14

64.     Kozko and Zoi intended or expected that RM Invest would reasonably rely on these representations.

65.     RM Invest justifiably relied upon Kozko and Zoi's representations when entering into the Agreement with NETE, USA, to its detriment.

66.     As described more fully above, NETE, USA's failure to obtain the promised financing and NETE, USA's failure to acquire the promised business accounts from DST resulted in the complete loss of the RM Invest business.

67.     Based on the foregoing, Kozko and Zoi's material misrepresentations to RM Invest regarding the ALFA-Bank financing DST business accounts were a direct cause of RM Invest's damages.

68.     As a result of said actions, RM Invest has suffered damages in excess of Fifty Million Dollars ($50,000,000.00) based on the lost value of the company.

**WHEREFORE**, RM Invest demands judgment against Kozko and Zoi in an amount in excess of Fifty Million Dollars ($50,000,000.00), plus cost and interest, as well as such further relief as the court deems appropriate.

### COUNT IV – CONVERSION
*RM Invest v. NETE, USA*

69.     RM Invest hereby repeats and incorporates the preceding paragraphs, as though set forth at length herein.

70.     RM Invest owned and had the right to possess its subscriber contracts, subscriber base, and its operating accounts.

71.     NETE, USA intentionally interfered with and/or exercised dominion and control

15

over Plaintiff's subscriber contracts, subscriber base, and its operating accounts.

72.     NETE, USA's interference and/or exercise of control deprived Plaintiff of possession and use of its subscriber contracts, subscriber base, and its operating accounts.

73.     NETE, USA's interference and /or exercise of control over RM Invest's subscriber contracts, subscriber base, and its operating accounts prevented the Plaintiff from continuing to operate its business.

74.     As a result of said actions, RM Invest has suffered damages in excess of Fifty Million Dollars ($50,000,000.00) based on the lost value of the company.

**WHEREFORE**, RM Invest demands judgment against NETE, USA in an amount in excess of Fifty Million Dollars ($50,000,000.00), plus cost and interest, as well as such further relief as the court deems appropriate.

## COUNT V- PROMISSORY ESTOPPEL
### *RM Invest v. NETE, USA*

75.     RM Invest hereby repeats and incorporates the preceding paragraphs, as though set forth at length herein.

76.     NETE, USA promised RM Invest that they would supply RM Invest with necessary financing to operate a joint business venture, deliver significant customer accounts to that business venture, grant RM Invest a thirty percent (30%) ownership of that business, and deliver shares of NETE, USA stock to RM Invest as long as RM Invest transferred its subscriber base, subscriber contracts, and RM Invest's operating accounts to the joint business venture.

77.     NETE, USA should reasonably have expected RM Invest transfer the requested subscriber base, subscriber contracts, and RM Invest's operating accounts in order to receive the

16

600,000,000 rubles in financing, delivery of significant customer accounts to the new business, a thirty percent (30%) ownership of the new business, and shares of NETE, USA stock.

78. Indeed, in reliance on NETE, USA's promise, RM Invest transferred its subscriber base, subscriber contracts, and operating accounts into the new business venture. These accounts, contracts, and clients generated in excess of Thirteen Million Dollars ($13,000,000.00) in revenue per year.

79. Nevertheless, NETE, USA failed to deliver the promised financing, customer contracts, ownership interest in the new business venture, and shares of NETE, USA stock.

80. Because of NETE's failure to abide by their promise, RM Invest lost its financing, client accounts, operating accounts, and RM Invest could no longer afford to operate. Moreover, RM Invest has suffered harm to their business and reputations in the electronic payment and billing processing industry.

81. This amounts to a definite, substantial financial detriment to RM Invest in excess of Fifty Million Dollars ($50,000,000.00) based on the lost value of the company.

82. Injustice only can be avoided if the NETE, USA's promise is enforced.

**WHEREFORE**, RM Invest demands judgment against NETE, USA in an amount in excess of Fifty Million Dollars ($50,000,000.00), plus cost and interest, as well as such further relief as the court deems appropriate.

## COUNT VI – UNIFORM TRADE SECRET CLAIM
### *RM INVEST v. NETE, USA*

83. RM Invest hereby repeats and incorporates the preceding paragraphs, as though set forth at length herein.

17

84.     RM Invest's subscriber lists, and subscriber contracts constitute trade secrets under the Uniform Trade Secrets Act ("UTSA") and the Florida Uniform Trade Secrets Act ("FUTSA").

85.     RM Invest's subscriber list and subscriber contracts possess independent economic value.

86.     The information contained in RM Invest's subscriber list and subscriber contracts is not generally known to others who can obtain economic value from its disclosure.

87.     The information contained in RM Invest's subscriber list and subscriber contracts is not readily ascertainable by proper means by those who can obtain value from its use.

88.     RM Invest uses reasonable efforts under the circumstances to maintain its secrecy.

89.     NETE, USA has misappropriated and continues to misappropriate RM Invest's subscriber accounts and subscriber contracts to RM Invest's detriment.

90.     As a result of said actions, RM Invest has suffered damages in excess of Fifty Million Dollars ($50,000,000.00) based on the lost value of the company.

**WHEREFORE**, RM Invest demands judgment against NETE, USA in an amount in excess of Fifty Million Dollars ($50,000,000.00), plus cost and interest, exemplary damages, attorneys' fees, as well as such further relief as the court deems appropriate.

## COUNT VII- UNJUST ENRICHMENT
### *RM Invest v. NETE, USA*

91.     RM Invest hereby repeats and incorporates the preceding paragraphs, as though set forth at length herein.

92.     In the alternative, if there is a finding that no enforceable agreement between RM

18

Invest and NETE, USA exists, RM Invest conveyed a benefit upon NETE, USA without receiving just compensation, and NETE, USA was therefore unjustly enriched.

93.     RM Invest conferred a substantial benefit upon NETE, USA when it transferred its business operations to TOT Money, at the behest and for the benefit of NETE, USA.

94.     As set forth more fully above, NETE, USA appreciated the benefit conferred that it collected revenues and continues to collect revenues generated by RM Invest's former business operations, but failed to compensate RM Invest for the for the value of its transferred business operations.

95.     NETE, USA's acceptance and retention of these benefits under the circumstances make it inequitable for NETE, USA to retain the benefit without paying the value of the benefit.

96.     As a result of NETE, USA's retention of the RM Invest business operations, NETE, USA has been unjustly enriched.

97.     As a result of the foregoing, RM Invest has suffered damages in excess of Fifty Million Dollars ($50,000,000.00) based on the lost value of the company's business operations.

**WHEREFORE**, RM Invest demands judgment against NETE, USA in an amount in excess of Fifty Million Dollars ($50,000,000.00), plus cost and interest, as well as such further relief as the court deems appropriate.

## COUNT VIII – SECURITIES FRAUD PURSUANT TO FLA. STAT. § 517.301
### *RM Invest v. NETE, USA*

98.     RM Invest hereby repeats and incorporates the preceding paragraphs, as though set forth at length herein.

99.     NETE, USA offered securities, in the form of NETE, USA shares of stock, to RM Invest as consideration for the transfer of RM Invest's subscriber base, subscriber contracts, and RM Invest's operating accounts under the terms of the Oral Agreement.

100.    NETE, USA, in connection with this offer of securities, used untrue statements of material fact and/or the omission of material facts necessary to make the statements made not misleading, to obtain property owned by RM Invest.

101.    Specifically, NETE, USA, and its agents made representations that prior to and at the time the above referenced Oral Agreement was made, that NETE, USA had agreements in place with ALFA-Bank to provide the necessary financing to support the business and that agreements were in place with DST with regard to the delivery of DST key accounts, including but not limited to Odnoklassniki.ru, Vkontakte.ru, and mail.ru.

102.    In fact, the financing agreements with ALFA-Bank and the agreements between NETE, USA and DST were not in place at the time the Oral Agreement was made.  Thus the above material statements made by NETE, USA were untrue and/or omitted material facts which caused the statements made to be misleading.

103.    In addition to NETE, USA's material misrepresentations, NETE, USA failed to deliver the promised securities to RM Invest.

104.    As a result of the foregoing, RM Invest has suffered damages in excess of Fifty Million Dollars ($50,000,000.00) based on the lost value of the company's business operations and the lost value of the promised securities.

**WHEREFORE,** RM Invest demands judgment against NETE, USA in an amount in excess of Fifty Million Dollars ($50,000,000.00), plus cost and interest, as well as such further relief as the court deems appropriate.

DATED this 10th day of March, 2014                 Respectfully Submitted,

                                        By:    _____
                                               Evan Frank, Esquire
                                               Alan L. Frank Law Associates, P.C.
                                               135 Old York Road
                                               Jenkintown, PA 19046
                                               Telephone No.: (215) 935-1000
                                               Facsimile: (215) 935-1110
                                               *Attorney for Plaintiff OOO-RM Invest*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all claims so triable.

DATED this 10th day of March, 2014       Respectfully Submitted,

By: _____
Evan Frank, Esquire
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
Telephone No.: (215) 935-1000
Facsimile: (215) 935-1110
*Attorney for Plaintiff OOO-RM Invest*

22